**UNITED STATES**

v.

**Technical Sergeant George H. DICUPE, FR 084–32–4143, United States Air Force.**

**ACM 23515.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 21 Jan. 1982.

Argued 21 Oct. 1982.

Decided 4 Nov. 1982.

Appellate Counsel for the Accused: May-da Tsaknis, Washington, D.C., Colonel George R. Stevens and Major Richard A. Morgan.

Appellate Counsel for the United States: Colonel James P. Porter, Colonel Kenneth R. Rengert and Major George D. Cato.

Before HEMINGWAY, CANELLOS and RAICHLE, Appellate Military Judges.

## DECISION AND ORDER

HEMINGWAY, Senior Judge:

Contrary to his pleas, the accused was convicted of the larceny of $1,000.00 from the Zaragoza Officers' Open Mess, in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921. The approved sentence extends to a bad conduct discharge, confinement at hard labor for eight months and reduction to airman first class. The case is now before us on both a petition for new trial and assignment of errors.

The accused was being employed, during his off-duty time, as a night manager at the Zaragoza Officers' Open Mess. In his capacity as a night manager, the accused had access to the cashier's cage, which contained two safes. One safe was for the use of the night manager and the other was for the use of the cashier. The cashier's safe was normally locked during the night manager's shift and none of the night managers possessed the combination to the lock on that safe. The evidence indicates that one of the cashiers failed to properly secure the safe at the end of her shift and the accused removed $1,000.00 in twenty dollar bills. During a search of the accused's quarters ten days later, $900.00 in twenty dollar bills was found secreted in a service cap in a plastic bag. The cap was found on the back of a shelf in the accused's bedroom closet. The accused denied knowledge of the presence of the money and asserted unsuccessfully that it had been planted there by persons unknown.

The accused, submitting affidavits from his daughter and a friend of hers, petitions for a new trial on the basis of newly discovered evidence. The affidavits state that on the day the accused's quarters were searched, but prior to the arrival of the search team, both girls entered the accused's house and heard noises coming from the master bedroom. Since no family members were supposed to be home, the girls became scared and ran out of the house. The accused claims that this evidence, if presented to another court-martial, would produce a different result. We disagree.

■ A petition for new trial may be granted when:

a. The record of trial, petition, and other matters presented by the accused indicate an injustice may have resulted.

b. The evidence in fact is newly discovered.

c. Due diligence to discover it was exercised at the time of trial.

d. The newly discovered evidence will probably cause a different result when presented to another court-martial. *United States v. Chadd,* 13 U.S.C.M.A. 438, 32 C.M.R. 438 (1963).

■ We view the information contained in the affidavits as matters which would have been discovered by due diligence at the time of trial. The assertion that the accused, believing evidence to have been planted in his house, did not discuss possible unusual occurrences around the house with family members is incredible. As noted in the government's brief, the affidavits "can be used to support the specter of a conspiracy to plant the money" but they "do not add substance to the specter. It remains ghostlike and of insufficient substance to create a reasonable doubt as to appellant's guilt." We are not persuaded that this evidence would cause a different result if presented to another court-martial. We find the claim of fraud on the court contained in the petition devoid of merit. The petition for a new trial is denied.

The accused assigns as error the admission into evidence of uncharged misconduct. During cross-examination of an assistant manager of the Officers' Open Mess, defense counsel inquired into the accused's performance of duty in the following manner:

Questions by defense counsel:

Q. As the assistant manager, were you supervisor of the night manager?

A. Yes, sir.

Q. Particularly about Sergeant Dicupe, in terms of following procedures and responsibility, etcetera, how did he perform his duty as night manager?

A. Outstandingly well.

Q. What about following procedures?

A. The total way to my knowledge. Everything that I expected or asked of him, there was absolutely no problem.

Q. Do you know of any occasion where paperwork wasn't handled properly or filled out properly?

A. No.

To rebut this evidence, trial counsel elicited testimony from a cashier that she had inadvertently left her safe open at the end of her shift several months before the offense charged here. The accused was the only other person who had access to the safe until the cashier returned for her next shift. During her next shift the following day, she found $40.00 missing from the safe and assumed the accused was responsible. The accused never called to her attention the insecurity of the safe as she would have expected. Defense counsel did not object to this line of questioning but conducted a thorough cross-examination on this issue apparently attempting to demonstrate the carelessness of the cashier and the possible access of others to the safe. Prior to findings, the military judge instructed the members:

> During the trial, evidence was admitted regarding a loss of forty dollars from the general cashier's safe on an occasion when the accused was night manager at sometime prior to the date on which the charged offense was alleged to have occurred. Such evidence was admitted solely for the limited purpose of rebutting testimony elicited by the defense regarding the prior good conduct and performance of the accused as a night manager at the Officers' Open Mess. The extent, if any, to which this evidence has accomplished that purpose is a matter for your determination. I wish to emphasize, however, that this evidence may be considered for no other purpose than this limited purpose that I've outlined, no other purpose whatsoever. You may not infer from such evidence that the accused has an evil disposition or a criminal propensity and that he therefore committed the offense charged that is before you today.

The accused now contends this rebuttal evidence is inadmissible under Mil.R.Evid. 404(b). We hold otherwise. Mil.R.Evid. 404(b) provides.

> Other crimes, wrongs, or acts. Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The list of reasons contained in the rule for the admission of uncharged misconduct is not exhaustive. *United States v. Johnson,* 634 F.2d 735 (4th Cir. 1980). Evidence of uncharged misconduct may be introduced to rebut an issue raised by the defense. *United States v. Janis,* 1 M.J. 395 (C.M.A.1976); *United States v. Johnson, supra; United States v. Fortes,* 619 F.2d 108 (1st Cir.1980). Further, such evidence must be plain, clear and conclusive and connected with the charged offense in point of time, place and circumstances. *United States v. Janis, supra; United States v. Butcher,* 1 M.J. 554 (A.F.C.M.R. 1975); *United States v. Kelly,* 7 U.S.C.M.A. 584, 23 C.M.R. 48 (1957). Trial judges must determine whether evidence of uncharged misconduct is offered for a proper purpose, whether it is relevant and whether its probative value outweighs the danger of unfair prejudice to the accused. Mil.R.Evid. 403; S. Saltzburg, L. Schinasi, D. Schuleter, Military Rules of Evidence Manual 184 (1981). When viewed against that background we find the evidence was properly before the court and correctly limited in its application by the instructions given to the members by the military judge.

918

Citing the absence of objections to some of the evidence and prosecution tactics of which he now complains, the accused contends he received ineffective assistance of counsel.

██ The right to be represented by counsel means effective counsel, *United States v. Jefferson*, 13 M.J. 1 (C.M.A.1982), but the accused has the burden of proving he was not represented by effective counsel. *United States v. Zuis*, 49 C.M.R. 159 (A.C.M. R.1974). Appellate courts will not second guess the strategic or tactical decisions made by trial defense counsel. *United States v. Rivas*, 3 M.J. 282 (C.M.A.1977). Mere mistakes and errors in judgment of counsel are insufficient to establish a violation of an accused's constitutional or statutory right to the effective assistance of counsel. *United States v. Rivas, supra.*

██ In our review of this record, we find no instances when the trial defense counsel remained silent when events at trial cried out for action. It is obvious that he was prepared and gave the accused his best efforts. This case could have been defended differently and the accused did not receive the perfect trial he would have preferred. But, it was fair and he was accorded due process of law.

We have considered the other assigned errors and have resolved them adversely to the accused. Accordingly, the findings of guilty and sentence are

AFFIRMED.

CANELLOS and RAICHLE, Judges, concur.